UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Owen V. Lee, *et al.*,

      Plaintiffs,

v.                                 Case No. 19-12133

Cincinnati Capital Corporation, *et al.*,     Sean F. Cox
                                           United States District Court Judge

      Defendants.
_____/

**OPINION & ORDER
ON DEFENDANTS' MOTIONS TO DISMISS**

This is a putative class action brought against two Defendants: 1) Cincinnati Capital

Corporation ("Cincinnati Capital"); and 2) Joseph Engelhart, the Chief Executive Officer and

owner of that corporation ("Engelhart"). The matter is currently before the Court on Motions to

Dismiss brought under Fed. R. Civ. P. 12(b)(6). After the motions were fully briefed, the Court

heard oral argument on January 9, 2020.

As explained below, the Court shall GRANT the Motion to Dismiss brought by

Defendant Engelhart and dismiss the claims against him. Plaintiffs are not attempting to pierce

the corporate veil. Rather, they seek to hold Engelhart personally liable – by virtue of being a

corporate officer, based upon a single provision in Michigan's Secondary Mortgage Lender Act

("SMLA"). This Court does not read that provision as holding a corporate officer personally

liable in a civil action brought under the Act and there are no factual allegations as to Engelhart

that would support the other causes of action being brought against him personally.

As to Defendant Cincinnati Capital's Motion to Dismiss, Plaintiffs agree that they cannot

bring any claims that pre-date the receivership of the bank that loaned them money.  The Court

shall deny the motion as to the remaining challenges.  The primary challenges in it are statute-of-

limitations challenges and such challenges are generally not appropriately brought under a Fed.

R. Civ. P. 12(b)(6) motion to dismiss.  Moreover, as to the timeliness of Plaintiffs' SMLA

claims, it appears that Plaintiffs' position has merit, which means that at least some of the claims

appear timely.

## BACKGROUND

Plaintiffs Owen V. Lee and Heather Lee ("Plaintiffs" or "the Lees")  filed this putative

class action in state court.  On July 22, 2019, Defendants removed the action to federal court,

based upon both diversity jurisdiction and federal-question jurisdiction.

Plaintiffs filed a First Amended Class Action Complaint (ECF No. 8) on August 19,

2019, naming the following two defendants: 1) Engelhart, an individual; and 2) Cincinnati

Capital, an Ohio corporation.  It asserts the following claims: 1) "Violation of the SMLA, Mich.

Comp. Laws Ann. § 493.51, *et seq*." (Count I); 2) "Unjust Enrichment/Restitution" (Count II); 3)

"Violation of Truth-in-Lending Act, 15 U.S.C. §§ 1601, *et seq*." (Count III); and 4) "Violation of

the Real Estate Settlement Procedures Act 12 U.S.C. §§ 2601, *et seq*." (Count IV).

Plaintiffs allege that Defendant Cincinnati Capital is an Ohio Corporation.  (First Am.

Compl. at ¶ 10).  Defendant Engelhart is the "Chief Executive Officer, owner, and agent of"

Cincinnati Capital.  (*Id*. at 11).  Plaintiffs describe the nature of this action as follows:

> 1.    This complaint is against Defendants for violations of the
>       Secondary Mortgage Loan Act, Mich. Comp. Laws Ann. § 493.51,
>       et seq., ("SMLA"), the Truth-in-Lending Act 15 U.S.C. § 1601, et
>       seq., ("TILA"), the Real Estate Settlement Procedures Act 12
>       U.S.C. § 2601, et seq. ("RESPA"), and for Unjust
>       Enrichment/Restitution under the laws of the State of Michigan,

based upon the unjust collection and retention of payments, to which they were not entitled, made by the Lees and the Putative Class.

2.       A violation of SMLA occurs when "[a] person, association, nonprofit corporation, common law trust, joint stock company, limited liability company, or any other group of individuals, however organized, or any owner, partner, member, officers, director, trustee, employee, agent, broker, or representative thereof" (Mich. Comp. Laws Ann. § 493.77(2), "[e]ngages in this state in the business of a broker, lender, or servicer without a license or registration under this act" (Mich. Comp. Laws Ann. § 493.77(2)(a)), or "[a]cts as a secondary mortgage loan officer in this state and is not a licensed secondary mortgage loan officer under the mortgage loan originator licensing act." Mich. Comp. Laws Ann. § 493.77(2)(b).

3.       Defendants violated the SMLA when they conducted business with the Lees and the Putative Class despite being unlicensed under SMLA. Mich. Comp. Laws Ann. § 493.77(2).

4.       Section 27 of SMLA provides that a violation of SMLA is also subject to the penalty and remedy provisions of the Credit Reform Act, which expressly includes "a class action" as a form of relief. Mich. Comp. Laws Ann. § 493.77(1); Mich. Comp. Laws Ann. § 445.1861(3).

5.       Defendants' collection of principal and interest mortgage payments without a license gives rise to a claim for Unjust Enrichment/ Restitution as the law prohibits them from collecting such payments.

6.       Further, Defendants violated various provisions of TILA and RESPA by failing to make certain disclosures or otherwise failing to provide certain information to the Lees and the Putative Class.

(First Am. Compl. at 2-3). The supporting factual allegations include:

18.       The Lees own their home, real property located at 49363 Parkshore Court in Northville, Michigan (the "Subject Property").

19.       On November 4, 2005, the Lees secured a home equity line of credit ("HELOC") in the amount of $525,000 from Main Street Bank.

20.    Main Street Bank, located at 201 E. Main Street, Northville, Michigan, 48167, was a full service financial institution that was organized and existed under the laws of the State of Michigan.

21.    To secure repayment of the HELOC, the Lees granted Main Street Bank a second mortgage on the Subject Property, behind in priority to their primary mortgage, which was recorded with Wayne County register of deeds (the "Second Mortgage").

22.    On October 10, 2008, Main Street Bank was closed by the Michigan Office of Financial & Insurance Services and the Federal Deposit Insurance Corporation ("FDIC") was named receiver.

23.    Sometime after it was appointed receiver, the FDIC sold to Cincinnati Capital a portfolio of loans and mortgages originated and owned by Main Street Bank (the "Loans").

24.    Among the Loans was the Lees' HELOC and Second Mortgage.

25.    In addition to the Lees' HELOC and Second Mortgage, the Loans included 229 similar loans that had been originated and owned by Main Street Bank and that were secured by real property located in the State of Michigan.

26.    On the date of purchase, the Loans had a book value of $13,632.991.90, for which Cincinnati Capital paid a total purchase price of $1,554,161.08 – or 11.4 cents per dollar of the book value.

27.    Upon information and belief, the FDIC, as receiver, transferred to Cincinnati Capital all rights to collect and enforce the terms of these 230 Loans.

28.    On June 18, 2009, an Assignment of Mortgage was recorded with the Wayne County Register of Deeds wherein the FDIC assigned the Second Mortgage to Cincinnati Capital (the "Assignment").

29.    Engelhart authorized the Assignment as CEO of Cincinnati Capital.

30.    At various times after the HELOC and Second Mortgage was sold to Cincinnati Capital, the Lees attempted to contact Defendants regarding, among other things, the financial hardship they were experiencing in relation to the HELOC and Second Mortgage, copies of various documents related to the loan, the loan history, and other related information.

31.     Most of these requests went unanswered with Cincinnati Capital
        responding, only in October 2015 and May 2019, with parts of the
        information requested.

32.     Among other things, Defendants never provided proof that Cincinnati
        Capital acquired the HELOC and Second Mortgage, notice of the basis of
        any change to the interest rate of the loan, and calculations of the
        payment, adequate periodic statements, or required disclosures.

33.     Based upon the dealings between the Lees and Defendants, upon
        information and belief, Defendants failed to provide requested or required
        information or notices to the other 229 mortgage holders.

(*Id*. at ¶¶ 18-33).

The First Amended Complaint asks the Court to "certify a class action of all persons

impacted by Defendants' improper activity under SMLA, specifically, the mortgagors whose

loans were purchased by Defendants and which were originally executed in favor of Main Street

Bank (as certified, "the Class"). (*Id*. at 14). "The Class Definition would include all persons

impacted by Defendants' improper activity under SMLA, Unjust Enrichment/ Restitution, TILA,

and RESPA, specifically, the mortgagors whose loans were purchased by Defendants and which

were originated by Main Street Bank." (*Id*.). "Upon information and belief, the Class consists

of members who acquired each of 230 loans, the Loans purchased by Defendants from the FDIC,

and joinder of all these members is impracticable." (*Id*.).

On September 10, 2019, Defendant Cincinnati Capital Corporation filed a Motion to

Dismiss, brought pursuant to Fed. R. Civ. P. 12(b)(6). On September 16, 2019, Defendant

Engelhart filed his own Motion to Dismiss, also brought pursuant to Fed. R. Civ. P. 12(b)(6).

Both motions were fully briefed and heard by the Court on January 9, 2020.

### STANDARD OF DECISION

Defendants brought the two pending motions, which include both statute-of-limitations

challenges and challenges to the sufficiency of the pleaded caused of actions, pursuant to Fed. R. Civ. P. 12(b)(6).

"That rule, however, 'is generally an inappropriate vehicle for dismissing a claim based upon a statute of limitations.'" *Engleson v. Unum Life Ins. Co. of America*, 723 F.3d 611, 616 (6th Cir. 2013) (quoting *Cataldo v. U.S. Steel Corp*, 676 F.3d 542, 547 (6th Cir. 2012)). That is because a plaintiff is not obligated to plead around an affirmative defense to state a claim. *Cataldo, supra*, at 547. "But, sometimes the allegations in the complaint affirmatively show that the claim is time-barred. When that is the case," "dismissing the claim under Rule 12(b)(6) is appropriate." In any event, "[b]ecause the statute of limitations is an affirmative defense, the burden is on the defendant to show that the statute of limitations has run." *Campbell v. Grand Trunk Western R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint and will be granted if the plaintiffs have failed "to state a claim upon which relief can be granted...." This Court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.,* 272 F.3d 356, 360 (6th Cir. 2001). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," otherwise the complaint will be dismissed. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). The plausibility standard requires the plaintiff to "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). The complaint must include more than "labels and conclusions" and "formulaic recitation[s] of

the elements of a cause of action...." *Id.*

## ANALYSIS

Defendant Engelhart and Defendant Cincinnati Capital each filed a separate Motion to Dismiss but they raise some of the same grounds.

As to Defendant Engelhart's motion, the Court need not proceed past the first ground because, as explained below, Plaintiffs failed to sufficiently plead any claims against him. The rest of the challenges will be addressed as to Defendant Cincinnati Capital.

I. **Plaintiffs' First Amended Complaint Fails To State A Claim Against Engelhart, The Individual Defendant, Upon Which Relief Can Be Granted.**

In his motion, Defendant Engelhart notes that Plaintiffs' have asserted all counts against him personally but asserts that "nowhere in the amended complaint do Plaintiffs' provide any specific allegations of wrongdoing against" him. (Def.'s Br. at 6). He notes that Plaintiffs reference "Defendants" together, without including any factual allegations specific to him. He notes that "[o]ther than the fact that he is the CEO and signed the assignment of mortgage on behalf of the FDIC under his authority from a power of attorney, Plaintiffs fail to plead any other facts to support a claim against him personally." (*Id.* at 8). As such, Defendant Engelhart assumes that Plaintiffs are seeking to pierce the corporate veil and hold him personally liable for the corporation's alleged actions. (*Id.* at 7). He argues that Plaintiffs have not pleaded sufficient facts to pierce the corporate veil or assert any causes of action against him.

In response, Plaintiffs state that they are not seeking to "proceed on a veil-piercing theory. Rather, the Lees have alleged that Defendant Engelhart personally engaged in wrongdoing in violation of Michigan and federal law." (Pls.' Br. at 1). Thus, the Court need not evaluate whether Plaintiffs have sufficiently pleaded any claims against Engelhart based on a

7

veil-piercing theory.  Rather, the Court must evaluate whether Plaintiffs have sufficiently

pleaded claims against Engelhart personally.

In that regard, Plaintiffs' response brief states, in pertinent part, the following as the basis

for asserting claims against Defendant Engelhart personally:

> . . . Defendant (incorrectly argues that Plaintiffs fail to plead any fact in support of
> a claim against him personally, other than that "he is the CEO and signed the
> assignment of mortgage on behalf of the FDIC under his authority from a power
> of attorney."  (ECF No. 19, Def's Mot. to Dismiss, Pg ID 17). Importantly, the
> Secondary Mortgage Loan Act ("SMLA"), which underpins both the Lees's state
> law claims in this case, provide that owner and officers of an entity who willfully
> or intentionally violates the SMLA are also liable for the violation.  See Mich.
> Comp. Laws Ann. § 493.77(2).  Accordingly, the Lees' allegation that Defendant
> is the chief executive officer, owner, and agent of Cincinnati Capital is, in fact,
> enough to state a claim against Defendant under state law.

(Pls.' Br. at 1-2).

The subsection of the state statute that Plaintiffs cite provides that an owner or officer of

a corporation that willfully or intentionally violates the SMLA in specified manners can be held

*personally liable for a criminal* "misdemeanor punishable by a fine of not more than $15,000.00,

imprisonment for not more than 1 year, or both."  Mich. Comp. Laws § 493.77(2).  There is no

case law as to this issue but this Court does not read that subsection as providing that an owner

or officer of a corporation can be held *personally liable for monetary damages in a civil action*.

Such a reading is supported by the lack of any language holding an owner or official personally

liable in the subsection of the statute that does authorize a civil action for injunctive relief or

money damages to be brought.  *See* Mich. Comp. Laws § 493.77(4).

Thus, the Court concludes that Plaintiffs have not sufficiently pleaded any SMLA claims

against Defendant Engelhart.  And given Plaintiffs' position that the SMLA claims "underpin

both the Lees's state law claims in this case," that means Plaintiffs fail to state a state-law unjust

enrichment claim against Engelhart.

In response to Engelhart's motion, Plaintiffs also assert that "Plaintiffs have indeed alleged sufficient facts against Defendant Engelhart" to state claims against him under the federal Truth in Lending Act and the Real Estate Settlement Procedures Act. (Pls.' Br. at 2). But Plaintiffs fail to identify *any supporting factual allegations* specific to Engelhart that could support a claim against him under either statute.

Moreover, this Court has reviewed Plaintiffs' First Amended Complaint and the only factual allegations made *as to Engelhart* are: 1) that "Engelhart is the Chief Executive Officer, owner, and agent of Cincinnati Capital;" and 2) that "Engelhart authorized the Assignment as CEO of Cincinnati Capital." (First Am. Compl. at ¶¶ 11 & 29). That's it. As such, Plaintiffs have not sufficiently pleaded a TILA or a RESPA claim against Engelhart.

## II. Defendant Cincinnati Capital Has Not Shown That Plaintiffs' SMLA Count Should Be Dismissed As Time-Barred.

Count I of Plaintiffs' First Amended Complaint asserts state-law claims against Defendant Cincinnati Capital under Michigan's SMLA.

Michigan's SMLA provides that, unless certain conditions exist, a "person shall not act as a broker, lender, or servicer without first obtaining a license" under the Act. Mich. Comp. Laws § 493.52(1).

As used in the SMLA, the term "servicer" "means a person who, directly or indirectly, services or offers to service secondary mortgage loans." Mich. Comp. Laws § 493.51(2)(s).

To "service" "means the collection or remittance for a lender, noteowner, or noteholder or a licensee's own account of 4 or more installment payments of the principal of, interest, or an amount placed in escrow under a secondary mortgage loan, mortgage servicing agreement, or an

agreement with a mortgagor." Mich. Comp. Laws § 493.51(2)(r).

A "secondary mortgage loan" is "a loan that has a term of 90 days or more; that is made to a person for personal, family, or household purposes; and that is secured by a mortgage on an interest in real property that is used as a dwelling and is subject to a lien of one or more outstanding mortgages. A secondary mortgage loan may be secured by other collateral in addition to real property. Notwithstanding the place of execution, nominal or real, of a secondary mortgage loan, if the real property that secures the loan is located in this state, a secondary mortgage loan is subject to this act and all other applicable laws of this state." Mich. Comp. Laws § 493.51(2)(p).

Here, Plaintiffs assert that Cincinnati Capital violated the SMLA because it acted as a servicer of their loan without having been licensed. (First Am. Compl. at ¶¶ 3- 5) (alleging the collection of principal and interest from Plaintiffs despite being unlicensed under the SMLA); (Pls.' Br. at 1) (noting this action arises out of the "illegal servicing of the Lees' home equity line of credit, which is secured by a second mortgage on the Lees' principal residence.").

In its motion, Cincinnati Capital does not appear to deny that it acted as a servicer of the Plaintiffs' loan that it acquired from the FDIC and that it did so without being unlicensed under the SMLA. Rather, Cincinnati Capital asserts that Plaintiffs' claims under Michigan's SMLA are barred by the applicable statute of limitations and asks the Court to dismiss Count I.

Notably, neither party has directed the Court to any statutory authority that addresses the period of limitations for bringing such a claim under Michigan's SMLA. In addition, neither party has directed the Court to any case law that analyzes the period of limitation that applies to such claims under the SMLA, or when such claims accrue.

## A.      What Period Of Limitation Applies To SMLA Claims?

Defendant Cincinnati Capital contends that a six-year period of limitation, pursuant to

Mich. Comp. Laws § 600.5813, applies to both of Plaintiffs' state-law claims (SMLA and unjust

enrichment).  That statute provides for a six-year period of limitation for "all other personal

actions" that do not have another limitation period spelled out in a Michigan statute.

In a footnote, Plaintiffs state that "[a]fter exhaustive research, [they] have not been able

to find any controlling authority regarding the applicable statute of limitations for a claim based

upon SMLA."  (Pls.' Br. at 13 n.5).  That footnote further states that Plaintiffs do not agree that a

six-year limitations period applies and that "a viable argument" could be made that a ten-year

limitations applies under Mich. Comp. Laws § 600.5807(5), that provides that the "period of

limitations is 10 years for an action founded on a convenant in a deed or mortgage of real

estate."  (*Id.*).  Plaintiffs contend that the Court need not definitely decide the issue at this time

because Cincinnati Capital's motion seeks a dismissal, not a ruling limiting damages.

Plaintiffs have not explained how their statutory claim under the SMLA, based on

Cincinnati Capital having allegedly serviced their loan without being licensed, can be construed

as an "action founded on a covenant in a deed or mortgage of real estate."

As such, it appears that a six-year period of limitations applies to Plaintiffs' state-law

SMLA claims in this case.  That does not resolve the dispute, however, because even if it were

established that a six-year period applies, the parties also disagree as to when Plaintiffs' claims

accrued.

## B.      When Does An Unlicensed Servicing Claim Under The SMLA Accrue?

Again, neither party has directed the Court to any statutory provisions, or case law

specific to the SMLA, that address when a claim under the SMLA accrues.

Cincinnati Capital takes the position that Plaintiffs' SMLA claims accrued at the time

that Cincinnati Capital *first began* servicing their loan, arguing:

> According to Plaintiffs' Amended Complaint, Cincinnati Capital should have been licensed at the time it began servicing the loans. At the time Cincinnati Capital obtained the pool of loans and began servicing the loans, the Plaintiffs' claims accrued. On February 24, 2009, their claim accrued and the period of limitations began to run. Therefore, any claim against Cincinnati Capital under the Secondary Mortgage Act, and by extension the Credit Reform Act, accrued on February 24, 2009. As such, any claim Plaintiffs, as well as any proposed class members[1], had against Cincinnati Capital needed to be filed by February 24, 2015.'
>
> However, Plaintiffs filed suit on June 24, 2019 after receiving notice of commencement of foreclosure proceedings. This is four years beyond the statute of limitations for Plaintiffs, or any other potential borrower or proposed class member from this loan pool purchased by Cincinnati Capital from the FDIC . . .

(Def.'s Br. at 7).

Conversely, Plaintiffs take the position that each time that Cincinnati Capital collected a

payment from them in violation of the SMLA, a separate and distinct claim accrued. (Pls.' Br. at

9). Plaintiffs note that, under the SMLA's plain language, "a person who collects payments of 4

or more installments of principal or interest, without a license violates the SMLA." (*Id*. at 9).

Plaintiffs contend that once Cincinnati Capital collected four payments from Plaintiffs without

being licensed, each time that Cincinnati Capital thereafter collected a payment from them

without being licensed "a separate and distinct claim accrued." (*Id*.).

Although Plaintiffs cannot direct the Court to any case law that expressly supports

---

[1] The Court has not certified a class in this putative class action. As such, the Court could not make any rulings, as to claims being time-barred or any other issues, that would bind anyone other than the two named Plaintiffs (the Lees). *See, eg., Faber v. Ciox Health, LLC*, __ F.3d __, 2019 WL 6596501 (6th Cir. Dec. 5, 2019) (Rulings on a dispositive motion made prior to class certification, and proper notice to the class, bind only the named plaintiffs and not the class).

Plaintiffs' position as to when their SMLA claims accrue, they support their position in two ways.

First, Plaintiffs note that their position is "consistent with the accrual statute applicable to claims on installment contracts, Mich. Comp. Laws Ann. § 600.5836, which provides, "[t]he claims on an installment contract accrue as each installment falls due." (Pls.' Br. at 9). That is, under Michigan law, when a plaintiff asserts a claim based on an installment contract, "the statutory period of limitation runs separately with respect to each installment as it becomes due." *Sparta State Bank v. Covell*, 197 Mich.App. 584, 587 (1992). This means that a"[f]ailure to make payments under an installment contract causes the applicable period of limitations to run anew from each missed payment." *Municipal Emp. Retire. Sys. v. Compuware Corp.*, 2006 WL 1711324 at * 3(Mich.App. 2006); *see also H.J. Tucker and Assocs. v. Allied Chucker*, 234 Mich.App. 550, 562 (1999) (finding claim for payments due under sales commission contract to be analogous to claims for payments under an installment contract, which accrue as each payment becomes due.) Plaintiffs contend that under this logic, when a party services an installment contract[2] without a license in violation of the SMLA, a separate claim should accrue each time that party violates the statute in doing so.

Second, and perhaps more importantly, Plaintiffs explain that their position is consistent with Michigan's general statute-of-limitations law that each alleged violation of a statute is a

---

[2]In its Reply Brief, Cincinnati Capital appears to claim that the parties' contract is not an installment contract. (*See* Def.'s Reply Br. at 1) ("Their analysis stems from the false conclusion that the contract at issue is an installment contract."). As Michigan courts have recognized, "§ 5836 does not provide a definition of 'installment contracts'" which can be defined broadly as "one in which the agreed performance of at least one of the parties is to be rendered, not as a whole at one time and place, but piecemeal at different times or different places." *H.J. Tucker*, 234 Mich.App. at 577.

separate claim with a separate claim of accrual. In support of that argument, Plaintiffs direct the Court to 1) *Garg v. Macomb Ctny. Commty. Mental Health Svs*., 472 Mich. 263 (2005); 2) *Dep't of Env'l Quality v. Gomez*, 318 Mich. App. 1 (2016); and 3) *Terlecki v. Stewart,* 278 Mich.App. 644 (2008).

*Gomez* involved claims of statutory violations by the defendants, who were alleged to have violated a state-law statute in filling in wetlands on their property. The "six-year statutory period of limitations set forth in MCL 600.5813 applied to the plaintiff's civil action." *Gomez*, 318 Mich.App. at 23. The Michigan Court of Appeals rejected the defendants' position that the complaint was barred because the claims against had accrued more than six years before the action was filed. In doing so, the court explained:

> MCL 600.5827 states, "Except as otherwise expressly provided, the period of limitations runs from the time the claim accrues." Generally, a " claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results." *Id.* Plaintiff filed suit on December 19, 2013, and conceded in the trial court that it was time-barred from seeking enforcement of any violation occurring between 2005 and 2007. The trial court limited its judgment accordingly, ordering defendants to restore the 1.2 acres of wetland "into which fill material was placed after December 19, 2007."
>
> However, defendants maintain that plaintiff's claim accrued in 2005 when they *first* placed fill dirt in the wetland, and they suggest that allowing plaintiff to enforce violations that occurred after 2007 invokes the continuing-violations doctrine—also known as the continuing-tort or continuing-wrong doctrine—which was abrogated by *Garg v. Macomb Co. Community Mental Health Servs.,* 472 Mich. 263, 284, 696 N.W.2d 646 (2005), amended 473 Mich. 1205, 699 N.W.2d 697 (2005). We disagree.

*Id*. at 52 (emphasis in original). The Michigan Court of Appeals acknowledged that the continuing violations doctrine is no longer viable in Michigan but explained that "an examination of *Garg* reveals that plaintiff's claims are not based on that doctrine." *Id.* That is because, "under *Garg*, each alleged violation of the statute was a separate claim with a separate

time of accrual." *Id.* at 53. As such, "the fact that some of a plaintiff's claims accrued outside the applicable limitations period does not time-bar all the plaintiff's claims." *Id.* The court explained that the defendants violated the statute at issue "each time they deposited fill material in the wetland." *Id.* "Therefore, even though plaintiff could not seek enforcement of the violations that occurred before December 19, 2007, it was not barred from initiating an enforcement action for the violations that occurred within the limitations period." *Id.*

While not cited by the parties, the same case law and general concepts were discussed by the Sixth Circuit when it reversed this Court's statute-of-limitations ruling in *Cole v. Marathon Oil Corporation*, 711 F. App'x 784 (6th Cir. 2017). There, the Sixth Circuit stated:

> The district court erred when it concluded that all of Plaintiffs' claims accrued at the first incident of Marathon's allegedly wrongful conduct, even though the conduct and resultant harm continue to the present day. Under Michigan's statute-of-limitations law, "each alleged violation ... [is] a separate claim with a separate time of accrual." *Dep't of Envtl. Quality v. Gomez*, 318 Mich.App. 1, 896 N.W.2d 39, 53 (2016). Marathon's alleged wrongful conduct is the "generation, creation, release, emission and discharge of Refinery Contaminants." Thus, each discharge is a violation giving rise to a separate claim. *Id.*; *Garg v. Macomb Cty. Cmty. Mental Health Servs.*, 472 Mich. 263, 696 N.W.2d 646, 658 (2005). Plaintiffs' complaint includes allegations of both past and present wrongful conduct. Any claims for alleged discharges occurring prior to February 22, 2013, which was three years prior to Plaintiffs' complaint, are time-barred. *See* Mich. Comp. Laws § 600.5805(10); *Garg*, 696 N.W.2d at 660. Any claims for discharges occurring after February 22, 2013, are timely. *See Gomez*, 896 N.W.2d at 53 ("[T]hat some of a plaintiff's claims accrued outside the applicable limitations period does not time-bar all the plaintiff's claims."). The district court therefore erred in dismissing the complaint as time-barred.

*Id.* at 786.

As was the situation in *Gomez* and *Cole*, Plaintiffs contend that Cincinnati Capital committed multiple violations of a statute and that each violation gives rise to a separate claim. Cincinnati Capital's alleged wrongful conduct is the servicing of the Lees' loan without being

15

licensed, in violation of the SMLA.

Under the SMLA's plain language, a person who collects payments of 4 or more installments of principal or interest, without a license violates the SMLA. Here, Plaintiffs contend that once Cincinnati Capital collected four installment payments from them without being licensed, each time that Cincinnati Capital thereafter collected a payment from them without being licensed constitutes a violation giving rise to a separate claim. Accordingly, the above law appears to point in Plaintiffs' direction as to when their SMLA claims against Cincinnati Capital accrued. This would mean that, like the situation in *Gomez* and *Cole*, at least some of the alleged violations are actionable and timely in this case.

Because Cincinnati Capital's motion seeks dismissal of the SMLA count entirely, however, the Court need not make any definitive rulings at this juncture and can simply deny its request to dismiss Count I. This Court finds that to be an especially prudent course of action here, given the current lack of case law specific to the period of limitations that applies, and when SMLA claims accrue, and the fact this is a putative class action. As such, this Court concludes that Cincinnati Capital has failed to establish, in connection with its motion under Fed. R. Civ. P. 12(b)(6), that Count I should be dismissed as time-barred.

## II.     Challenges To Plaintiffs State-Law Claim Of Unjust Enrichment

Count II of Plaintiffs' First Amended Complaint is titled "Unjust Enrichment/Restitution" and alleges as follows:

45.     The allegations of the above paragraphs are incorporated by reference as though fully restated herein.

46.     Defendants have engaged in a business that requires a license under the SMLA for which Defendants do not have a license.

47.     Further, Defendants have been engaging in business activity in the State of Michigan without a Certificate of Authority as a Foreign Corporation under the Michigan Business Corporation Act, Mich. Comp. Laws Ann. § 450.2003.

48.     Defendants received the benefits of conducting business without a license from the Lees and the Putative Class including, but not limited to, collecting and retaining loan payments and other charges, and receiving proceeds from foreclosure sales of the real property, which collectively exceed the amount Cincinnati Capital paid for the Loans.

49.     Defendants were not due these benefits because they were obtained in violation of the SMLA and in violation of the laws of the State of Michigan.

50.     Inequity to the Lees and the Putative Class has resulted, and continues to result, from Defendants' retention of this benefit, including, but not limited to:

        a)      their overpayment on the Loans;

        b)      being unable to participate in federal or state programs such as loan
                modifications;

        c)      foreclosure on their real property;

        d)      their being made to abide by contractual obligations that are otherwise void for public policy and other reasons; and

        e)      otherwise being denied the privileges and benefits associated dealing with a SMLA license holder.

51.     If Defendants are permitted to proceed with their interests in the real property securing the Loans, including the Subject Property, the Court would thereby be permitting an unlicensed corporation to engage in unlicensed mortgage activity within the state of Michigan that causes harm to the Lees and the Putative Class because of Defendants' failure to comply with State and Federal duties and obligations.

52.     If Defendants are permitted to proceed with their interests in the real property securing the Loans, including the Subject Property, Defendants would receive all the benefits associated with the liens, despite being unable to validate the debts underlying the liens, in violation of the laws of

equity.

53. If Defendants are permitted to proceed with their interests in the real property securing the Loans, including the Subject Property, Defendants would be permitted to benefit and profit from their unlicensed mortgage activity, at the expense of the Lees and the Putative Class.

(First Am. Compl. at 10-12).  Defendant Cincinnati Capital seeks dismissal of this count on two grounds.

## A.    Dismissal For Failure To State An Unjust Enrichment Claim

First, Cincinnati Capital seeks dismissal of the unjust enrichment count, asserting that it fails to state an unjust enrichment claim under Michigan law.

The Michigan Supreme Court "'has long recognized the equitable right of restitution when a person has been unjustly enriched at the expense of another.'"  *Morris Pumps v. Centerline Piping, Inc.,* 274 Mich.App. 187, 193 (2006) (quoting *Michigan Ed. Employees Mut. Ins. Co. v. Morris*, 460 Mich. 180, 198 (1999)).  "Unjust enrichment is a cause of action to correct a defendant's unjust retention of a benefit owed to another.  *Wright v. Genesee Cnty*., 504 Mich. 410, 418 (2019).  "It is grounded in the idea that a party 'shall not be allowed to profit or enrich himself inequitably at another's expense.'"  *Id. Wright, supra* (quoting *McCreary v. Shields*, 333 Mich. 290, 294 (1952)).

"Whether a specific party has been unjustly enriched is generally a question of fact." *Morris Pumps v. Centerline Piping, Inc*., 274 Mich.App. 187, 193 (2006).  "However, whether a claim for unjust enrichment can be maintained is a question of law."  *Id.*

The quasi-contract doctrine is itself a subset of the law of unjust enrichment.  *Wright, supra*, at 421.  Where a quasi-contract type of unjust enrichment claim is brought the familiar applicable law is stated as follows:

> Under Michigan law, to establish unjust enrichment [the plaintiff] must show 1) the receipt of a benefit by [the defendant from the plaintiff], and 2) an inequity resulting to [the plaintiff] because of the retention of the benefit by [the defendant]. *Karaus v. Bank of N.Y. Mellon*, 300 Mich.App. 9, N.W.2d 897, 905 (2012). If [the Plaintiff] can establish that [the defendant] has been unjustly or inequitably enriched at its expense, the law will imply a contract to prevent the unjust enrichment.

*PCA Minerals, LLC v. Merit Energy Co., LLC*, 725 F. App'x 342, 345 (6th Cir. 2018).

"[W]hile all quasi-contract is premised on unjust enrichment, not all unjust enrichment is quasi-contract." *Wright, supra*, at 421.

Here, Cincinnati Capital's motion asserts that the First Amended Complaint fails to state an unjust claim against it under Michigan law. Cincinnati Capital construes Plaintiffs' unjust enrichment claim as one being brought under a quasi-contract theory and asserts that the claim fails because express contracts (the note and mortgage) exist and govern the rights and obligations between the parties. "As such, there is no contract to imply since the rights between the parties are specifically set forth therein." (Def.'s Br. at 10).

In response, the Lees assert that "[t]his argument ignores the nature of Plaintiff's allegations in this case and the various legal theories underlying the cause of action for unjust enrichment." (Pls.' Br. at 18). Directing the Court to the Michigan Supreme Court's decision in *Wright*, Plaintiffs note that not all unjust enrichment claims are made under a quasi-contract theory. Plaintiffs state that "Michigan courts have held that a claim for unjust enrichment can be asserted to remedy a defendant's improper collection of monies from a plaintiff in violation of law, without the implication of a contracts at law." (*Id*. at 19). Plaintiffs direct the Court to one such case, *Mercy Services for Aging v. City of Rochester Hills*, 2010 WL 4137465 (Mich. Ct. App. Oct. 21, 2010). Plaintiffs state:

Here, Plaintiffs' claim for unjust enrichment is similarly based on the Defendant's improper and illegal collection of monies from the Plaintiffs, in violation of SMLA. FAC, ECF No. 8, ¶¶ 46-49. Defendant is correct that under Michigan law, a court cannot imply a contract where there is already an express agreement covering the parties' transaction. But in this case, Plaintiffs' claim for unjust enrichment does not require the implication by the Court of a contract-at-law. Rather, the claim arises out of and seeks restitution for the improper and illegal collection of monies by the Defendant.

(*Id*. at 20).

Notably, Cincinnati Capital's Reply Brief did not address the unjust enrichment count or Plaintiffs' arguments regarding that count.

As such, the only challenge to the sufficiency of the unjust enrichment count is that it fails because an express contract exists such that the law will not imply a contract. That argument does not require the Court to dismiss the unjust enrichment count in the First Amended Complaint because it is not made under a quasi-contract theory. Thus, that argument does not aid Cincinnati Capital. The Court declines to dismiss the unjust enrichment claim, based on the limited challenge made to that claim in the pending motion.

**B.** **Dismissal Of Unjust Enrichment Claims As Time-Barred**

Second, Cincinnati Capital challenges the unjust enrichment claims on timeliness grounds. Like the Lees' SMLA claims, Cincinnati Capital contends that their state-law unjust enrichment claims are also subject to a six-year period of limitations and are time-barred.

Plaintiffs do not appear to dispute that a six-year period of limitations applies to their unjust enrichment claim under Michigan law. And even if they did, there is authority that appears to indicate that the same limitations period that governs their SMLA claims would apply because those unjust enrichment claims are based upon Defendant not having been licensed as required by the SMLA. *See PCA Minerals, LLC v. Merit Energy Co., LLC*, 725 F. App'x 342, _

(6th Cir. 2018) ("Michigan courts typically apply a gravamen analysis, that is, review the complaint in its entirety to determine the true nature of the claims, and apply the statute of limitations governing the legal gravamen claim to equitable claims that seek analogous relief."). As such, it appears that a six-year period of limitation would apply to Plaintiffs' unjust enrichment claims.

The parties have not separately analyzed when the unjust enrichment claim accrued. As such, this Court follows the same analysis that applies to the SMLA claim, and concludes that at least some claims appear timely. Thus, the Court will not dismiss the unjust enrichment count as untimely at this juncture.

## III. Cincinnati Capital's Challenges To Plaintiffs' Federal Claims (TILA And RESPA)

The section of Plaintiffs' First Amended Complaint that describes the nature of the action alleges that Defendant Cincinnati Capital "violated various provisions of TILA and RESPA by failing to make certain disclosures or otherwise failing to provide certain information to the Lees and the putative class members." (First Am. Compl. at ¶ 6). The First Amended Complaint then has a separate TILA count and a separate RESPA count.

The following are factual allegations in Plaintiffs' First Amended Complaint that support the TILA and RESPA counts:

27.    Upon information and belief, the FDIC, as receiver, transferred to Cincinnati Capital all rights to collect and enforce the terms of these 230 Loans.
28.    On June 18, 2009, an Assignment of Mortgage was recorded with the Wayne County Register of Deeds wherein the FDIC assigned the Second Mortgage to Cincinnati Capital (the "Assignment").
. . . .
30.    *At various times* after the HELOC and Second Mortgage was sold to Cincinnati Capital, the Lees attempted to contact Defendants regarding, among other things, the financial hardship they were experiencing in

relation to the HELOC and Second Mortgage, copies of various documents related to the loan, the loan history, and other related information.

31.  *Most of these requests went unanswered* with Cincinnati Capital responding, only in October 2015 and May 2019, *with parts of the information requested.*

32.  *Among other things, Defendants never provided proof that Cincinnati Capital acquired the HELOC and Second Mortgage, notice of the basis of any change to the interest rate of the loan, and calculations of the payment, adequate periodic statements, or required disclosures.*

(First Am. Compl. at ¶¶ 27-32) (emphasis added).

The TILA Count alleges that the Lees' loan is "subject to the disclosure and other requirements of TILA, 15 U.S.C. §§ 1601, et seq. and the implementing regulations.  (First Am. Compl. at ¶ 55).  They allege that Cincinnati Capital was "required to provide notification and other information as required by TILA and implementing regulations, including, but not limited to, proof that Defendants acquired the Loan, notice of the basis for changes in the interest rate of the loan, calculations of the payment and adequate periodic statements."  (*Id*. at ¶ 56).  They allege that Cincinnati Capital "failed to provide the required documentation including, but not limited to, proof of periodic statements, proper notice that Defendants acquired the Loans, required disclosures, and proof of the validity of the draws that totaled the amounts owed."  (*Id*. at ¶ 57)

The RESPA Count alleges that the Lees' loan is "subject to the disclosure and other requirements of RESPA, 12 U.S.C. §§ 2601, *et seq*., and implementing regulations."  (*Id*. at ¶ 60).  They allege Cincinnati Capital was "required to provide notification and other information as required by RESPA and implementing regulations including" "proof that Defendants acquired the Loans, notice of the basis for changes of the interest rate of the loan, calculations of the payment and adequate periodic statements."  (*Id*. at ¶ 61). They allege that Cincinnati Capital

failed to provide the required documentation of "proof of periodic statements, proper notice that Defendants acquired the second mortgage, required disclosures, and proof of the validity of the draws that totaled the amounts owed." (*Id*. at ¶ 62).

Cincinnati Capital's Motion to Dismiss challenges Plaintiffs' TILA and RESPA counts as time-barred.[3] Again, statute of limitations challenges are normally not addressed in the context of motions to dismiss. Moreover, Cincinnati Capital's brief notes that equitable tolling may apply to TILA and RESPA claims. Thus, this challenge would be better suited to a challenge brought in the context of a summary judgment motion. That is especially so because Plaintiffs have alleged that they contacted Cincinnati Capital at various times and, as such, the Court cannot determine that the counts should be dismissed as untimely based on the allegations in the complaint.

## IV.     Challenge To Any Claims That Pre-Date The Receivership

As the final ground in its motion, Cincinnati Capital asserts that to the extent that Plaintiffs are asserting any claims that would pre-date the date that Main Street Bank was placed into FDIC receivership (such as a claim involving the origination of the loan), those claims would be barred by 12 U.S.C. § 1821 et seq. (Def.'s Br. at 14).

In Plaintiffs' brief, and at motion hearing, Plaintiffs' Counsel confirmed that Plaintiffs are not asserting any claims arising out of events that pre-date the receivership. (ECF 21 at

---

[3]Cincinnati Capital also asserts, almost as an aside, that Plaintiffs' TILA and RESPA claims fail to state a claim because the First Amended Complaint fails "to provide any specific sections remunerating the basis for their claims under RESPA or TILA." (Def.'s Br. at 11). Cincinnati Capital has not cited any cases wherein a court has dismissed claims for failure to cite specific statutory sections, or implementing regulations, in a complaint that alleges multiple violations of a statute.

PageID.401 at n.2).[4]

## CONCLUSION & ORDER

The Court GRANTS Defendant Engelhart's motion to the extent that the Court concludes that Plaintiffs fail to state a claim against him. Therefore, all claims against Defendant Engelhart are DISMISSED.

Plaintiffs concede that they cannot assert any claims against Cincinnati Capital in this action that would pre-date the date that Main Street Bank was placed into FDIC receivership (such as a claim involving the origination of the loan). Defendant Cincinnati Capital's Motion to Dismiss is otherwise DENIED for the reasons set forth above.


IT IS SO ORDERED.

                                        s/Sean F. Cox
                                        Sean F. Cox
                                        United States District Judge

Dated: January 16, 2020

---

[4]Plaintiffs' brief also states that they "are not asserting a separate and distinct claim under the Credit Reform Act." (*Id*. at PageID.404).