## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Owen V. Lee, *et al.*,

      Plaintiffs,

v.                              Case No. 19-12133

Cincinnati Capital Corporation,        Sean F. Cox
                                        United States District Court Judge

      Defendant.

_____/

## OPINION & ORDER

      This is a putative class action but a motion for class certification has not yet been filed or ruled upon.  Thus, only the claims of the named Plaintiffs, Owen and Heather Lee, are at issue at this juncture.  The matter is currently before the Court on Defendant's Motion for Judgment on the Pleadings and a motion filed by Plaintiffs seeking partial summary judgment.  The parties have briefed the issues and the Court concludes that oral argument is not necessary.  For the reasons that follow, the Court shall grant Defendant's motion in part and deny it in part.  The Court shall grant the motion to the extent that it shall rule that Defendant is entitled to judgment on the pleadings with respect to the SMLA claims asserted in Count I, and the derivative unjust enrichment claims asserted in Count II, and the RESPA claims asserted in Count IV.  With respect to Plaintiffs' TILA claims asserted in Count III, that the sole claim remaining is Plaintiffs' claim under § 1641(g) that Defendant failed to notify the borrowers in writing of the assignment of a mortgage loan from the creditor to the assignee.  Given these rulings, Plaintiffs' motion seeking partial summary judgment as to their SMLA claim shall be denied.

1

## BACKGROUND

Plaintiffs Owen V. Lee and Heather Lee ("Plaintiffs" or "the Lees") filed this lawsuit against Defendants Joseph Engelhart and Cincinnati Capital Corporation in state court. On July 22, 2019, Defendants removed the action to federal court, based upon both diversity jurisdiction and federal-question jurisdiction.

On August 19, 2019, Plaintiff's filed an amended complaint that included class action allegations – Plaintiffs' "First Amended Class Action Complaint." (ECF No. 8).

In September of 2019, both Defendants filed Motions to Dismiss, brought under Fed. R. Civ. P. 12(b)(6). This Court dismissed the claims against Defendant Engelhart. Defendant Cincinnati Capital's Motion to Dismiss assumed that Plaintiffs were asserting SMLA claims against it as a "servicer" and argued that the SMLA claims, and the others, are untimely.[1] This Court denied the statute of limitations challenges, noting that statute-of-limitations challenges are generally not appropriately brought under a Fed. R. Civ. P. 12(b)(6) motion to dismiss. Plaintiffs agreed, however, that they cannot bring any claims that pre-date the receivership of the bank that loaned them money.

Defendant Cincinnati Capital Corporation has asserted the following counterclaims against Owen and Heather Lee: 1) Breach of Contract (Count I); 2) Promissory Estoppel (Count II); and 3) Unjust Enrichment (Count III). (*See* ECF No. 34).

At this juncture, the operative Complaint is Plaintiffs' Second Amended Class Action Complaint ("SAC"). (ECF No. 50) and the only remaining Defendant is Cincinnati Capital

---

[1] The issues presented in Defendant Cincinnati Capital's Motion to Dismiss did not include whether Plaintiffs had plausibly alleged claims under the SMLA, RESPA, or TILA.

Corporation ("Defendant" or "Cincinnati Capital").  Plaintiffs' SAC, filed on July 20, 2020, is

the third complaint filed in this action.

The following claims are asserted against Defendant: 1) "Violation of the SMLA, Mich.

Comp. Laws Ann. § 493.51, *et seq*." (Count I); 2) "Unjust Enrichment/Restitution" (Count II); 3)

"Violation of Truth-in-Lending Act, 15 U.S.C. §§ 1601, *et seq*." (Count III); and 4) "Violation of

the Real Estate Settlement Procedures Act 12 U.S.C. §§ 2601, *et seq*." (Count IV).  Plaintiffs

describe the overall nature of this putative class action as follows:

1. This complaint is against Defendants for violations of the
   Secondary Mortgage Loan Act, Mich. Comp. Laws Ann. § 493.51,
   et seq., ("SMLA"), the Truth-in-Lending Act 15 U.S.C. § 1601, et
   seq., ("TILA"), the Real Estate Settlement Procedures Act 12
   U.S.C. § 2601, et seq. ("RESPA"), and for Unjust
   Enrichment/Restitution under the laws of the State of Michigan,
   based upon the unjust collection and retention of payments, to
   which they were not entitled, made by the Lees and the Putative
   Class.

2. A violation of SMLA occurs when "[a] person, association,
   nonprofit corporation, common law trust, joint stock company,
   limited liability company, or any other group of individuals,
   however organized, or any owner, partner, member, officers,
   director, trustee, employee, agent, broker, or representative
   thereof" (Mich. Comp. Laws Ann. § 493.77(2), "[e]ngages in this
   state in the business of a broker, lender, or servicer without a
   license or registration under this act" (Mich. Comp. Laws Ann. §
   493.77(2)(a)), or "[a]cts as a secondary mortgage loan officer in
   this state and is not a licensed secondary mortgage loan officer
   under the mortgage loan originator licensing act."  Mich. Comp.
   Laws Ann. § 493.77(2)(b).

3. Defendants violated the SMLA when they conducted business with
   the Lees and the Putative Class despite being unlicensed under
   SMLA.  Mich. Comp. Laws Ann. § 493.77(2).

4. Section 27 of SMLA provides that a violation of SMLA is also
   subject to the penalty and remedy provisions of the Credit Reform
   Act, which expressly includes "a class action" as a form of relief.

3

Mich. Comp. Laws Ann. § 493.77(1); Mich. Comp. Laws Ann. § 445.1861(3).

5.      Defendants' collection of principal and interest mortgage payments without a license gives rise to a claim for Unjust Enrichment/ Restitution as the law prohibits them from collecting such payments.

6.      Further, Defendants violated various provisions of TILA and RESPA by failing to make certain disclosures or otherwise failing to provide certain information to the Lees and the Putative Class.

(SAC at 2-3).

The SAC asks the Court to "certify a class action of all persons impacted by Defendant's improper activity under SMLA, TILA, and/or RESPA, specifically, the mortgagors whose loans were purchased by Defendants and which were originally executed in favor of Main Street Bank (as certified, "the Class"). (*Id*. at 13). "The Class Definition would include all persons impacted by Defendants' improper activity under SMLA, Unjust Enrichment/ Restitution, TILA, and RESPA, specifically, the mortgagors whose loans were purchased by Defendants and which were originated by Main Street Bank." (*Id*.). "Upon information and belief, the Class consists of members who acquired each of 230 loans, the Loans purchased by Defendants from the FDIC, and joinder of all these members is impracticable." (*Id*. at 14).

Because the parties did not agree upon how this case should proceed, and could not agree upon a proposed scheduling order, the Court had the parties brief the issues and submit proposed scheduling orders. On July 17, 2020, this Court issued an Opinion & Order Granting Plaintiffs' Motion To Combine Class And Merits Discovery." (ECF No. 48). In that same Opinion and Order, the Court denied Defendant's cross-motion seeking to bifurcate discovery.

On July 20, 2020, this Court issued the "Initial Scheduling Order" in this case. (ECF No.

4

49).  That order was modeled after the proposed scheduling order submitted by Plaintiffs'

counsel.  Among other things, it provided that fact discovery would be completed by October 30,

2020, and that Plaintiffs' Motion for Class Certification would be filed March 22, 2021.

Notably, it further provided:

> 7.     Remaining issues (including mediation/case evaluation, witness lists, *dispositive motion practice*, final pretrial conference and a trial date) *will be addressed during a subsequent case management conference with this Court, following the Court's ruling on Plaintiffs' motion for class certification.*

(*Id*. at 2) (emphasis added).  Thus, at the suggestion and urging of Plaintiffs, this Court's Initial

Scheduling Order provided that Plaintiffs would file their motion for class certification on March

22, 2021 and then, *after* this Court ruled on that motion, this Court would set a date for the filing

of summary judgment motions.

On July 20, 2020, Plaintiffs filed their Second Amended Complaint.

On September 18, 2020, Defendant filed a Motion for Judgment on the Pleadings.  (ECF

No. 53).

Plaintiffs have not yet filed their Motion for Class Certification.  Nevertheless, without

seeking leave to do so, on October 2, 2020, Plaintiffs filed a "Motion For Partial Summary

Judgment" (ECF No. 59), asking the Court to rule in favor of the named Plaintiffs (the Lees) as

to liability only, and only as to one of the four counts.


## ANALYSIS

### I.     Defendant's Motion For Judgment On The Pleadings

Fed. R. Civ. P. 12(c) governs a motion for judgment on the pleadings and provides that

"[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."

In its Motion for Judgment on the pleadings, Defendant states that it seeks judgment in its favor as to all claims asserted against it.

### A.    The Court Denies Plaintiffs' Improper Requests To Amend.

Plaintiffs have now filed three different complaints in this case.  Defendant's Motion for Judgment on the Pleadings, brought under Fed. R. Civ. P. 12(c), challenges Plaintiffs' operative complaint – their SAC.

In responding to Defendant's motion, however, Plaintiffs made cursory and improper references about filing yet another amended complaint.

At this stage of the litigation, if Plaintiffs wish to file yet another amended complaint, they must file a motion seeking leave to file an amended complaint.  And "Eastern District of Michigan Local Rule 15.1 further requires that a party seeking leave to amend a pleading provide the Court with a copy of its proposed amended pleading." *D.E. & J Limited P'ship v. Conaway*, 284 F. Supp.2d 719, 751 (E.D. Mich. 2003).

Plaintiffs are undoubtedly aware of the proper procedure for seeking leave to file an amended complaint, as they previously filed a motion to amend when they sought leave to file the SAC.

But now, faced with Defendant's Motion for Judgment on the Pleadings that challenges whether Plaintiffs have included sufficient factual allegations to plausibly state a claim under the statutes at issue, Plaintiffs have not filed a motion seeking leave to file an amended complaint, nor have they presented this Court with a proposed amended complaint.  Rather, after making

various arguments in opposition to Defendant's challenges to each of their claims, Plaintiffs

repeatedly assert:

> But, to the extent this Court disagrees, then Plaintiffs respectfully submit that justice requires they be given an opportunity to amend their pleading to set forth their allegations in the level of detail this Court deems necessary.

(Pls.' Br. at 11, 16, 18, & 19).

The Sixth Circuit's "disfavor of such a bare request in lieu of a properly filed motion for

leave to amend was made clear in *Begala v. PNC Bank, Ohio, N.A.*, 214 F.3d 776, 784 (6th Cir.

2000)." *Alliance for Children, Inc. v. City of Detroit Public Schools*, 475 F.Supp.2d 655, 669

(E.D. Mich. 2007). What Plaintiffs "may have stated, almost as an aside," to this Court in their

brief in opposition to Defendant's motion is not the proper procedure for requesting leave to

amend. *Begala,* 214 F.3d at 784; *see also Louisiana Sch. Emp. Ret. Sys. v. Ernst & Young, LLP,*

622 F.3d. 471, 486 (6th Cir. 2010); *Robbins v. New Cingular Wireless PCS, LLC*, 854 F.3d 315,

322 (6th Cir. 2017).

Simply stated, Plaintiffs are not "entitled to an advisory opinion from the Court

informing them of the deficiencies of the complaint and then an opportunity to cure those

deficiencies." *Begala, supra,* at 784. Accordingly, the Court denies Plaintiffs' improper

requests to file another amended complaint and shall evaluate the pending motion based on the

operative complaint – Plaintiffs' SAC.


### B.    Applicable Standard That Applies To This Motion

Motions for judgment on the pleadings under Rule 12(c) are analyzed under the same

standard as motions to dismiss for failure to state a claim under Rule 12(b)(6). *Ziegler v. IBP*

*Hog Mkt., Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001).

When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the

complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all

reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th

Cir. 2007).  The court "need not accept as true legal conclusions or unwarranted factual

inferences." *Id.* (quoting *Gregory v. Shelby Cnty.,* 220 F.3d 433, 446 (6th Cir. 2000)). "[L]egal

conclusions masquerading as factual allegations will not suffice." *Eidson v. State of Tenn. Dep't

of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).  Dismissal is appropriate if the plaintiff

fails to include sufficient factual allegations that make the asserted claim plausible on its face.

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### C.      Challenges To Plaintiffs' SMLA And Unjust Enrichment Counts

Defendant's motion begins by challenging the SMLA and Unjust Enrichment counts,

asserting:

> The Lees do not have a viable claim under the Michigan SMLA because
> the SMLA simply does not apply to the type of financial instrument at issue in
> this case – a home equity line of credit.  Likewise, the Lees' purported unjust
> enrichment claim must fail because it is entirely derivative[2] of the SMLA
> argument.

(Def.'s Br. at 5).

Defendant contends that Plaintiffs' SMLA count fails for two reasons: 1) because the

complaint does not include sufficient factual allegations to show any SMLA violation by

Defendant; and 2) because the transaction at issue here is a HELOC and the SMLA does not

---

[2]Plaintiffs do not dispute that their unjust enrichment count is derivative of their SMLA
count.  Thus, that count rises or falls with the SMLA count.

apply to HELOCs in any event.

As the parties recognize, "there is a dearth of Michigan authority interpreting the SMLA." (Pls.' Br. at 6). Thus, there are no Michigan, or even federal, cases that address whether the SMLA applies to HELOCs or what factual allegations are required to plead a plausible violation of the SMLA. As such, the Court looks to the statute itself and applies the *Twombly-Iqbal* pleading standard.

### 1. The Statute

Michigan's SMLA provides, in pertinent part, that, "a person shall not act as a broker, lender, or *servicer without first obtaining a license* under this act or registering under section 32, unless 1 or more of the following apply:"

> (a) the person is providing secondary mortgage loan officer services as an employee or agent of only 1 broker, lender, or services and is a licensed secondary mortgage loan officer if that registration is required under the mortgage loan originator licensing act.
>
> (b) The person is *licensed under the consumer financial services* act, 1988 PA 161, MCL 487.205` to 487.2072.
>
> (c) The person acts as a lender but makes or negotiates 2 or fewer secondary mortgage loans in a calendar year.
>
> (d) *The person acts as a servicer but services 10 or fewer secondary mortgage loans in a calendar year.*

Mich. Comp. Laws § 493.52(1) (emphasis added).

As used in the SMLA, the term "servicer" "means a person who, directly or indirectly, services or offers to service secondary mortgage loans." Mich. Comp. Laws § 493.51(2)(s).

To "service "means the collection or remittance for a lender, noteowner, or noteholder or a licensee's own account of *4 or more installment payments* of the principal of, interest, or an

amount placed in escrow under a secondary mortgage loan, mortgage servicing agreement, or an agreement with a mortgagor." Mich. Comp. Laws § 493.51(2)(r)(emphasis added).

A "secondary mortgage loan" is defined as "a loan that has a term of 90 days or more; that is made to a person for personal, family, or household purposes; and that is secured by a mortgage on an interest in real property that is used as a dwelling and is subject to a lien of one or more outstanding mortgages. A secondary mortgage loan may be secured by other collateral in addition to real property. Notwithstanding the place of execution, nominal or real, of a secondary mortgage loan, if the real property that secures the loan is located in this state, a secondary mortgage loan is subject to this act and all other applicable laws of this state." Mich. Comp. Laws § 493.51(2)(p).

### 2.    Plaintiffs' Allegations

In the SAC, the Lees allege that "Defendant violated the SMLA when it *conducted business* with the Lees" "despite being unlicensed under SMLA.  Mich. Comp. Laws Ann. § 493.77(2)."  (SAC at ¶ 3) (emphasis added).

The Lees allege that they "own their home, real property located at 49363 Parkshore Court in Northville, Michigan (the "Subject Property")."  (*Id.* at ¶ 18).  "On November 4, 2005, the Lees secured a home equity line of credit ("HELOC") in the amount of $525,000 from Main Street Bank."  (*Id.* at ¶ 19).  "To secure repayment of the HELOC, the Lees granted Main Street Bank a second mortgage on the Subject Property, behind in priority to their primary mortgage, which was recorded with Wayne County register of deeds (the 'Second Mortgage')." (*Id.* at ¶ 21).

Defendant has submitted a copy of the actual HELOC, which can be considered in

evaluating this motion.  (ECF No. 17-4).  That document is titled, "Home Equity Line Of

Credit."  It states that "[t]his is an agreement about your home equity line of credit."  It provides

for a total "line of credit" of $525,000.00 and *shows no initial advance or loan to the Lees*.

Rather, it provides that the Lees may "request a loan under this plan" by various methods.  The

HELOC was opened on November 4, 2005 and lists a "Maturity Date" of November 4, 2015. It

provides that the lender (Main Street Bank) has "secured your obligations under this plan by

taking a security interest (by way of a separate security agreement, mortgage or other instrument

dated 11/04/2005)" in the Subject Property.

      "On October 10, 2008, Main Street Bank was closed by the Michigan Office of Financial

& Insurance Services and the Federal Deposit Insurance Corporation ("FDIC") was named

receiver."  (SAC at ¶ 22).  After it became the receiver, the "FDIC sold to Cincinnati Capital a

portfolio of loans and mortgages originated and owned by Main Street Bank," including the

"Lees' HELOC and Second Mortgage."  (*Id* at ¶¶ 23 & 24).

      "Upon information and belief, the FDIC, as receiver, transferred to Cincinnati Capital all

rights to collect and enforce the terms of" these loans.  (*Id.* at ¶ 27).  "On June 18, 2009, an

Assignment of Mortgage was recorded with the Wayne County Register of Deeds wherein the

FDIC assigned the Second Mortgage to Cincinnati Capital." (*Id.* at ¶ 28).

      The actual SMLA Count, then alleges:

35.     The SMLA, at Mich. Comp. Laws Ann. § 493.52(1), provides that "a
person shall not act as a broker, lender, or servicer without first obtaining
a license under this act or registering under section 3a . . ."  Mich. Comp.
Laws Ann. § 493.52(1).

36.     The SMLA governs Defendant's activities.

37.     Despite the SMLA's requirement that Defendant obtain a license,
Defendant is not licensed and it has never been licensed.

38.     Defendant intentionally operates without a license.

11

39.     Defendant is therefore in violation of SMLA and the Lees and the Putative
        Class have suffered harm as a result.

(SAC at 7-8).

Again, Defendant contends that Plaintiffs' SMLA count fails: 1) because the complaint

does not include sufficient factual allegations to show any SMLA violation by Defendant; and 2)

because the transaction at issue here is a HELOC and the SMLA does not apply to HELOCs in

any event.

The Lees allege that Defendant "violated the SMLA when it *conducted business* with the

Lees," (SAC at 3), and cites to the SMLA's provisions pertaining to brokers, lenders, and

servicers, (*Id*. at 35), without alleging that Defendant acted as a servicer of a loan extended to the

Lees.  The Lees have asserted that in other filings (*see, e.g.*, Pls.' Br. in response to Motion

Dismiss, ECF No. 21 at 1-2, asserting that "Defendant's wrongdoing consisted of illegal

***servicing*** of the subject line of credit during the term of the loan").  Notably, however, they did

not include factual allegations regarding such "servicing" of a loan by Defendant  in their SAC,

nor did they include any well-pleaded factual allegations as to Defendant having taken actions

pertaining to the collection or remittance of installments payments on the HELOC (ie,

allegations as to the actions that constitute servicing).  That is, there are no factual allegations as

to Defendant having collected principal or interest payments from the Lees.

Indeed, as Defendant points out in its brief, the Lees have not even alleged that they took

loans or advances out under the HELOC they obtained from Main Street Bank.

Moreover, Plaintiffs did include any factual allegations as to whether Defendant: 1) is

licensed under the consumer financial services act; or 2) services more than ten secondary

mortgage loans in a calendar year.  If either of those conditions exist, Defendant would not have

violated the SMLA even if it had acted as a servicer of a secondary mortgage loan.

Because the SMLA contains specific definitions and thresholds that must be met before it requires a license, this Court agrees with Defendant that Plaintiffs' SAC (the Lees' now third complaint in this action) does not contain sufficient factual allegations to plausibly allege a SMLA claim against Defendant.

Given this ruling, the Court need not decide the second challenge to the SMLA count raised by Defendant.  And this Court declines to do so because it  is an issue of first impression of whether Michigan's SMLA applies to HELOCs.

The Court shall grant judgment on the pleadings to Defendant as to the SMLA Count, and the derivative Unjust Enrichment Count.

### D.     TILA Count (Count III)

Defendant asserts that Plaintiffs' TILA count (Count III of Plaintiffs' SAC), fails for a number of reasons.

Defendant argues that it cannot be held liable under TILA as a matter of law, as either a creditor, servicer, or assignee.  In response, Plaintiffs concede that Defendant could only be liable under TILA as an "assignee," as they do not argue that it could held liable as either a creditor or servicer.  (*See* Pls.' Br. at 11).  Thus, the Court need not consider the arguments as to creditors or servicers.

Plaintiffs do not dispute that Defendant does not meet the two-prong test for assignee liability set forth in § 1641(e).  Rather, Plaintiffs base their TILA count on 15 U.S.C. §1641(g).

In its opening brief, Defendant acknowledged that the only exception to § 1641(e)'s limitation on assignee liability is § 1641(g).  (*See* Def.'s Br. at 16; Def.'s Reply Br. at 5).  Thus,

Defendant does not dispute that § 1641(g) therefore requires an assignee "to notify the borrower in writing" of the assignment of a mortgage loan from the creditor to the assignee. (*Id.*). And this appears to the be sole TILA claim that Plaintiffs seek to pursue. (*See* Pls.' Br. at 14-15).

In its reply brief, Defendant states that this sole potentially viable TILA claim under 1641(g) is "subject to a strict one-year statute of limitations," and notes that it will raise a timeliness challenge at the summary-judgment phase of this case. (Def.'s Reply Br. at 5).

Accordingly, as to Count III, the sole claim remaining in this action is this claim under § 1641(g).

## E. RESPA Count (Count IV)

In Count IV, Plaintiffs assert a claim against Defendant for violation of RESPA for Defendant's failure to adequately respond to Plaintiffs' requests for information.

"RESPA provides that a borrower may submit a 'Qualified Written Request' (QWR) to its loan servicer for 'information relating to the servicing of such loan.' 12 U.S.C. § 2605(e)(1)(A)." *Drew v. Kemp-Brooks*, 802 F. Supp.2d 889, 898 (E.D. Mich. 2011). By all accounts, Plaintiffs' RESPA count in this case is premised on 12 U.S.C. § 2605(e), titled "Duty of loan servicer to respond to borrower inquiries." It provides, in pertinent part:

> (e) Duty of loan servicer to respond to borrower inquiries
>    (1) Notice of receipt of inquiry
>       (A) In general
>       If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.
>       (B) Qualified written request

For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that–

  (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

  (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

(2) Action with respect to inquiry

Not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall–

  (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);

  (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--

    (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

    (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--

  (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

  (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

12 U.S.C. § 2605(e).

"These duties are only triggered, however, if: (1) the servicer receives a QWR; and (2) the written correspondence meets the statutory definition of a QWR.  12 U.S.C. § 2605(e)(1)(A)."  *Moody v. CitiMortgage, Inc*., 32 F.Supp.3d 869, 873 (W.D. Mich. 2014).  "To be a QWR, the correspondence must (1) be written; (2) not be included with a payment; (3) include the name and account number of the borrower, or a way to enable the servicer to identify the account; and (4) include a statement of the reasons the borrower believes the account to be in

error, or include sufficient detail to enable the servicer to determine what information is being sought. 12 U.S.C. § 2605(e)(1)(B)." *Moody, supra*.

If those duties are so triggered, the servicer must acknowledge its receipt and correct the borrower's account or provide a written explanation or clarification of the account within 30 days. 12 U.S.C. § 2605(e)(2). A servicer may be liable for actual damages to a borrower for its failure to provide written response to a borrower's QWR for information relating to the servicing of the borrower's debt. *See* 12 U.S.C. § 2605(f).

Defendant's motion contends that Plaintiffs' RESPA count should be dismissed because the Lees have not sufficiently alleged: 1) that they sent any QWRs to Defendant; or 2) that Defendant's responses were deficient.

In most cases wherein a plaintiff asserts a RESPA claim based on an alleged failure to adequately respond to a QWR, the plaintiff attaches a copy of the written correspondence sent to the Defendant to their complaint (ie, a copy of the alleged QWR). Because such documents are referenced in the complaint and central to the claim, such documents can be considered in analyzing a motion to dismiss or a motion for judgment on the pleadings, without converting that motion into a summary judgment motion. Here however, the Lees did not attach a copy of any alleged written QWRs they sent to Defendant as either exhibits to their complaints, or as exhibits to their response brief. As such, the Court is left with the allegations in the SAC.

Plaintiffs allege that "Defendant violated various provisions" of "RESPA by failing to make certain disclosures or otherwise failing to provide certain information to the Lees." (SAC at ¶ 6). "At various times after the[ir] HELOC and Second Mortgage was sold to Cincinnati Capital, the Lees *attempted* to contact Defendant regarding, among other things, the financial

16

hardship they were experiencing in relation to the HELOC and Second Mortgage, copies of various documents related to the loan, the loan history, and other related information." (*Id*. at 30) (emphasis added). "*Most* of these requests went unanswered with Cincinnati Capital responding, only in October and May 2019, with parts of the information requested." (*Id*. at 31) (emphasis added). "Among other things, Defendant never provided proof that Cincinnati Capital acquired the HELOC and Second Mortgage, notice of the basis of any change to the interest rate of the loan, and calculations of the <u>payment</u>, adequate periodic statements, or required disclosures." (*Id*. at 32).

The actual RESPA count only alleges:

59.  The allegations of the above paragraphs are incorporated by reference as though fully restated herein.
60.  The Loans are subject to the disclosure and other requirements of RESPA, 12 U.S.C. §§ 2601, *et seq*., and implementing regulations.
61.  Defendant was required to provide notification and other information as required by RESPA and implementing regulations including, but not limited to, proof that Defendant acquired the Loans, notice of the basis for changes of the interest rate of the loan, calculations of the payment and adequate periodic statements.
62.  Defendant failed to provide the required documentation including, but not limited to, proof of periodic statements, proper notice that Defendant acquired the second mortgage, required disclosures, and proof of the validity of the draws that totaled the amounts owed.
63.  The Lees and the Putative Class suffered actual damages, or are otherwise entitled to statutory damages, plus reasonable attorneys' fees and costs.

(SAC at ¶¶ 59-63).

### 1.    Are There Sufficient Allegations That The Lees Sent Defendant A QWR That Would Trigger Obligations Under RESPA?

Defendants contend that nothing in the complaint "suggests that the Lees did anything to trigger a statutory duty for [Defendant] to provide them with" information under RESPA.

(Def.'s Br. at 24).  The Court agrees.

The Lees have failed to attach, or even describe, their alleged communications with Defendant.  Rather, they vaguely assert that, at unspecified times, they "*attempted* to contact Defendant" in some unspecified manner.  (SAC at ¶ 30) (emphasis added).  They neglect to include any factual allegations as to form of that attempted contact, such as whether it was by telephone, in person, in writing, etc.  Thus, the Lees have not even alleged that they sent a written correspondence to Defendant that could form the basis of their RESPA count.  The Court therefore agrees that the Lees have failed to include sufficient facts to plausibly allege that they sent Defendant a written correspondence that could constitute a QWR, thereby triggering a duty to respond under RESPA.

> **2.      Assuming *Arguendo* They Did, Are There Sufficient Allegations That The Responses Were Deficient?**

Defendant also contends that the RESPA count fails because the Lees have not sufficiently alleged that Defendant failed to respond adequately to any QWR that had been sent. Defendant asserts that the Lees' "Complaint does not specify what information the Lees requested and what information they did not receive."  (Def.'s Br. at 24).  Rather, the "Lees cursorily allege that '[m]ost' of their attempts to contact Cincinnati 'went unanswered . . . with Cincinnati Capital responding, only in October 2015 and May 2019, with parts of the information requested.'  (Dkt. 50 at ¶¶ 30-31.)  They thus concede both that Cincinnati did respond to them and did provide information responsive to their requests.  Yet they leave both Cincinnati and the Court to guess how those responses were allegedly deficient."  (Def.'s Br. at 22).

As Defendant notes, this Court has dismissed RESPA claims for this very reason and

18

direct the Court to its decision in *Roller v. Litton Loan Servicing*, 2011 WL 2490597 (E.D. Mich. 2011) wherein this Court stated:

> Plaintiffs, however, have not alleged how Litton failed to provide an adequate response to Plaintiffs' QWRs. In order to state a claim for relief under § 2605(e), Plaintiffs must allege more than conclusory statements that Litton failed to provide the information requested. *See Thomas v. Trott & Trott PC*, 2011 WL 576666 at *8 (E.D. Mich. 2011) (Zatkoff, J.); *Mekani v. Homecomings Financial, LLC* 752 F.Supp.2d 785, 795 (Borman, J.); *Langley v. Chase Home Finance, LLC*, 2011 WL 1150772 (W.D. Mich. 2011). Plaintiffs have not alleged in any detail how the responses by Litton are insufficient, and as such, have failed to state a claim under § 2605(e). At a minimum, Plaintiffs have not pleaded the facts necessary, as required by *Twombly*, to plausibly suggest that Litton failed to adequately respond to Plaintiffs' QWRs.

*Id*. at *5.

Accordingly, Defendant is entitled to judgment in its favor as to Count IV.

## CONCLUSION & ORDER

For the reasons stated above, Defendant's Motion for Judgment on the Pleadings is GRANTED IN PART AND DENIED IN PART.  The motion is GRANTED to the extent that the Court RULES that Defendant is entitled to judgment on the pleadings with respect to the SMLA claims asserted in Count I, the derivative unjust enrichment claims asserted in Count II, and the RESPA claims asserted in Count IV.  With respect to Plaintiffs' TILA claims asserted in Count III, the Court RULES that the sole claim remaining is Plaintiffs' claim under § 1641(g) that Defendant failed to notify the borrowers in writing of the assignment of a mortgage loan from the creditor to the assignee.

Given these rulings, Plaintiffs' motion seeking partial summary judgment as to their

SMLA claim is DENIED.

IT IS SO ORDERED.

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  February 16, 2021